WILLIAM J. FRIMEL (Bar No. 160287)
Seubert French Frimel & Warner LLP
1075 Curtis Street
Menlo Park, CA  94025
Tel:  650.322.3048
Fax:  650.833.2976

Attorneys for Respondent
GLASSDOOR, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re Ex Parte* Application of<br><br>        ZURU, INC.,<br><br>Applicant,<br><br>For an Order Pursuant to 28 U.S.C. § 1782<br>Granting Leave to Obtain Discovery for<br>Use in Foreign Proceedings. | Misc. Case No. 22-mc-80026-AGT<br><br>**RESPONDENT GLASSDOOR, INC.'S**<br>**NOTICE OF MOTION AND MOTION TO**<br>**QUASH SUBPOENAS ISSUED BY**<br>**APPLICANT ZURU, INC.;**<br>**MEMORANDUM OF POINTS AND**<br>**AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date:  April 8, 2022<br>Time:  10:00 a.m.<br>Judge: Hon. Alex G. Tse<br>Courtroom:  A |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that, on April 8, 2022, at 10:00 a.m., or as soon thereafter as counsel may be heard, in the United States District Court for the Northern District of California, located at the San Francisco Courthouse, Courtroom A, 15th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, Respondent Glassdoor, Inc. ("Glassdoor") will, and hereby does, move for an order quashing the subpoenas issued by Applicant ZURU, Inc. ("ZURU") to Glassdoor in the above-referenced matter.

This motion is made pursuant to N.D. Cal. L.R. 7-1 *et seq.* and the Court's February 4, 2022 order in this matter, and is based on this Notice, the accompanying Memorandum of Points and Authorities, Proposed Order and Declarations of Joseph M. Freeman, William J. Frimel and Tim Mahood, the pleadings and documents on file in this action, and all other matters that may appropriately be presented to the Court before or at the hearing on this motion.

**MOTION TO QUASH**

Glassdoor moves to quash the subpoenas issued to Glassdoor by ZURU dated February 8, 2022 (the "Subpoenas") on the following grounds:

1.      The Subpoenas are "unduly intrusive or burdensome," and thus should not be enforced pursuant to 28 U.S.C. § 1782.  *IPCom GMBH & Co. v. Apple Inc.*, 61 F. Supp. 3d 919, 922 (N.D. Cal. 2014) (quoting *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004).  This is because ZURU fails to provide the necessary "real evidentiary basis" to compel the disclosure of anonymous speakers' identities, as required under *Highfields Capital Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969 (N.D. Cal. 2005).  Moreover, the allegedly defamatory statements at issue constitute opinion, which is not subject to defamation liability under either United States or New Zealand law.

2.      The Subpoenas represent an improper "attempt to circumvent proof-gathering restrictions or other policies of a foreign country or the United States," and thus should not be enforced pursuant to 28 U.S.C. § 1782.  *Intel Corp.*, 542 U.S. at 265.  This is because the law of New Zealand, where ZURU purports to intend to file a lawsuit against persons who allegedly defamed ZURU, would not permit ZURU to obtain the discovery sought from Glassdoor.

3.     Even assuming ZURU is entitled to some portion of the discovery sought in the Subpoenas, ZURU should not be allowed to obtain documents concerning "the number of persons/web users who have seen and/or engaged with the" allegedly defamatory statements, as that information is not relevant to ZURU's claims in its prospective New Zealand lawsuit, would be impracticable for Glassdoor to generate, and is confidential and proprietary to Glassdoor.

Dated:  March 1, 2022

WILLIAM J. FRIMEL
Attorneys for Respondent
GLASSDOOR, INC.

RESPONDENT GLASSDOOR, INC.'S MOTION TO QUASH

1

## TABLE OF CONTENTS

**Page(s)**

2

3 INTRODUCTION                                                                    1

4 STATEMENT OF FACTS                                                              4

5 ARGUMENT                                                                        6

6 I.      THE SUBPOENAS IMPROPERLY ATTEMPT TO CIRCUMVENT
         PROOF-GATHERING RESTRICTIONS UNDER NEW ZEALAND
7        LAW                                                                      7

8        A. ZURU Could Not Obtain Pre-Action Discovery of the Does'
9           Identities in a New Zealand Court                                     7

10       B. New Zealand's Membership in the Commonwealth of Nations Is
            Irrelevant                                                            8
11

12 II.     THE SUBPOENAS ARE UNDULY INTRUSIVE AND
          BURDENSOME                                                              9
13

14       A. ZURU Cannot Meet the Fed. R. Civ. P. 26(d) Requirements               10

15           1.  ZURU's complaint in the hypothetical New Zealand litigation
                 would not withstand a motion to dismiss                          10
16

17               a.  ZURU does not identify any defamatory statements in the
                     October 12, November 13 or November 20 reviews              11

18               b.  The objected-to language in the remaining Reviews is
19                   opinion                                                      13

20           2.  ZURU's authorities are not to the contrary                       15

21       B. ZURU Fails to Provide a "Real Evidentiary Basis" For Its Defamation
            Claims                                                                16
22

23       C. ZURU's Authority Is Not to the Contrary                               17

24 III.    ZURU'S REQUEST FOR INFORMATION REGARDING
          GLASSDOOR USERS WHO "HAVE SEEN AND/OR ENGAGED
25        WITH THE REVIEWS" SHOULD BE DENIED                                      18

26 CONCLUSION                                                                     20

27

28

RESPONDENT GLASSDOOR, INC.'S MOTION TO QUASH

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3
*In re App. for Appt. of a Comm'r. re Req. for Jud. Assistance,* No. C 11–80136,
2011 WL 2747302 (N.D. Cal. Jul. 13, 2011) ............... 17

4
*In re Cathode Ray Tube (CRT) Antitrust Litig.,* No. C–07–5944, 2013 WL
5
183944 (N.D. Cal. Jan. 17, 2013) ............... 8, 19

6
*Choyce v. SF Bay Area Indep. Media Ctr.,* No. 13–cv–01842, 2013 WL 6234628
(N.D. Cal. Dec. 2, 2013) ............... 12
7

8
*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725 (9th Cir.
1999) ............... 2, 14

9
*Cochran v. NYP Holdings, Inc.,* 58 F. Supp. 2d 1113 (C.D. Cal. 1998) ............... 13

10
*Comcast Cable Comms., LLC v. Hourani*, No. 15-cv-1724, 2016 WL 2992053
11
(D.D.C. May 23, 2016) ............... 3, 9, 18-19

12
*CPA Australia Ltd. v New Zealand Inst. of Chartered Accountants* [2015] NZHC
13
1854 ............... 2, 16

14
*Digital Shape Techs., Inc. v. Glassdoor, Inc.,* No. 16-mc-80150, 2016 WL
5930275 (N.D. Cal. Oct. 12, 2016) ............... 17
15

16
*In re Frederick,* No. 1-20-MC-965, 2020 WL 5742772 (W.D. Tex. Sept. 24,
2020) ............... 8
17

18
*In re FutureCorp. Int'l. Pty Ltd.,* No. C12–80267, 2012 WL 5818288 (N.D. Cal.
Nov. 15, 2012) ............... 8

19
*Global Telemedia Int'l., Inc. v. Doe 1*, 132 F. Supp. 2d 1261 (C.D. Cal. 2001) ............... 14

20
*Gonzales v. Google, Inc.,* 234 F.R.D. 674 (N.D. Cal. 2006) ............... 19

21
*In re App. of Guy,* No. M 19–96, 2004 WL 1857580 (S.D.N.Y. Aug. 19, 2004) ............... 8
22

23
*Highfields Capital Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969 (N.D. Cal. 2005) ............... 1, 2, 10, 16-17

24
*In re IKB Deutsche Industriebank AG,* No. 09-cv-7852, 2010 WL 1526070
25
(N.D. Ill. Apr. 8, 2020) ............... 8

26
*In re App. of Lazaridis,* 865 F. Supp. 2d 521 (D. N.J. 2011) ............... 19

27
*In re Legatum,* No. 21-mc-80032, 2021 WL 706436 (N.D. Cal. Feb. 23, 2021) ............... 17

28

*IS Prime Ltd. v. Glassdoor, Inc.,* No. 21-mc-80178, 2021 WL 5889373 (N.D. Cal. Dec. 13, 2021) .......... 17

*Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) .......... 3, 6, 20

*IPCom GMBH & Co. v. Apple Inc.*, 61 F. Supp. 3d 919 (N.D. Cal. 2014) .......... 6, 7

*In re Jud. Assistance Pursuant to 28 U.S.C. § 1782 by Macquarie Bank Ltd.,* No. 2:14–cv–00797, 2015 WL 3439103 (D. Nev. May 28, 2015) .......... 7-8

*Kechara House Buddhist Ass'n. Malaysia v. Does,* No. 15–cv–00332, 2015 WL 5538999 (N.D. Cal. Sept. 18, 2015) .......... 12

*In re King.com Ltd.,* No. 16-mc-80070, 2016 WL 4364286 (N.D. Cal. Aug. 16, 2016) .......... 3, 19-20

*McIntyre v. Ohio Elections Comm.*, 514 U.S. 334 (1995) .......... 1, 9

*Mitchell v Sprott* [2002] 1 NZLR 766 .......... 2, 10, 14

*Norwich Pharmacal Co. v Customs & Excise Comm'rs* [1974] AC 133 (HL) .......... 7

*OpenMind Sols., Inc. v. Does 1-39*, No. C 11-3311, 2011 WL 4715200 (N.D. Cal. Oct. 7, 2011) .......... 9-10

*In re PGS Home Co. Ltd.*, No. 19-mc-80139, 2019 WL 6311407 (N.D. Cal. Nov. 25, 2019) .......... 6, 11

*Piping Rock Ptnrs. v. David Lerner Assocs., Inc.,* 946 F. Supp. 2d 957 (N.D. Cal. 2013) .......... 10

*Quinteros v. InnoGames,* No. C19-1402, 2020 WL 3574268 (W.D. Wash. Jul. 1, 2020) .......... 12

*Rodriguez v. Panayiotou,* 314 F.3d 979 (9th Cir. 2002) .......... 16

*Sergeeva v. Tripleton Int'l. Ltd.*, 834 F.3d 1194 (11th Cir. 2016) .......... 6

*Siemer v Stiassny* [2011] NZCA 106 .......... 15-16

*Solomon v Prater* [2020] NZHC 481 .......... 15

*Tahi v Taua* [2018] NZHC 3372 .......... 3, 7

*Tokyo Univ. of Social Welfare v. Twitter, Inc.,* No. 21-mc-80102, 2021 WL 4124216 (N.D. Cal. Sept. 9, 2021) .......... 1, 6, 9-11, 17

1

*United Kingdom v. United States,* 238 F.3d 1312 (11th Cir. 2001)                    6, 9

*USA Techs., Inc. v. Doe,* 713 F. Supp. 2d 901 (N.D. Cal. 2010)                    14

*ZL Techs., Inc. v. Gartner, Inc.,* 709 F. Supp. 2d 790 (N.D. Cal. 2010)                    15

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RESPONDENT GLASSDOOR, INC.'S MOTION TO QUASH

**INTRODUCTION**

The First Amendment provides for a "right to express . . . anonymously, without fear of expensive adverse consequences, . . . views about matters in which many other members of the public are interested." *Highfields Capital Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969, 974-75 (N.D. Cal. 2005); *see also McIntyre v. Ohio Elections Comm.*, 514 U.S. 334, 342 (1995) ("[A]n author's decision to remain anonymous . . . is an aspect of the freedom of speech protected by the First Amendment.").  In the interest of protecting this right, "when a private civil plaintiff seeks to discover the identity and address of an anonymous internet speaker," as Applicant ZURU, Inc. ("ZURU") does, the plaintiff must "persuade the court that there is a real evidentiary basis for believing that the defendant has engaged in wrongful conduct that has caused real harm to the interests of the plaintiff"; and, "only if[] the plaintiff makes [that] evidentiary showing," the court is to "assess and compare the magnitude of the harms that would be caused to the competing interests by a ruling in favor of plaintiff and by a ruling in favor of defendant." *Highfields Capital Mgmt.*, 385 F. Supp. 2d at 975-76.  These safeguards are important because "enforcing a subpoena in this kind of setting poses a real threat to chill protected comment on matters of interest to the public." *Id.* at 980.

The *Highfields* test is equally applicable where, as here, a prospective defamation plaintiff applies, under 28 U.S.C. § 1782, for an order requiring disclosure of an anonymous speaker's identity in aid of litigation the would-be plaintiff plans to file in a foreign country.  *See, e.g., Tokyo Univ. of Social Welfare v. Twitter, Inc.*, No. 21-mc-80102, 2021 WL 4124216, *3 (N.D. Cal. Sept. 9, 2021) ("Where a section 1782 applicant seeks leave to conduct discovery to identify an anonymous speaker," due to the "potential chilling effect on First Amendment rights of ordering disclosure of an anonymous speaker's identity," "the test articulated in *Highfields* . . . applies").  In demanding the identifying information in the possession of Glassdoor, Inc. ("Glassdoor") regarding individuals who anonymously criticized ZURU on Glassdoor's website, ZURU fails to meet the *Highfields* requirements.  Thus, ZURU's two subpoenas to Glassdoor (the "Subpoenas"), which seek documents showing the above-described identifying information and a deposition authenticating and "explaining" those documents, should be quashed.

*First*, although ZURU has subpoenaed information regarding the anonymous authors of *six* employer reviews of ZURU on Glassdoor.com (the "Reviews"), the allegedly defamatory statements on which ZURU relies appear in only *three* of the Reviews (specifically, the Reviews dated November 2, 11, and 25).  There plainly is no "real evidentiary basis" for compelling Glassdoor to identify the authors of Reviews that undisputedly contain no defamatory statements.  As to the Reviews in which the complained-of statements do appear, the statements at issue are vague and general expressions of dislike for ZURU.  For instance, ZURU cites the statement that its co-CEOs "are completely out of touch with how to run a business," and the assertion that "[t]hey see their staff as dispensable worker bees and have zero respect for them."  Under the law of either the United States or New Zealand (where ZURU assertedly intends to file suit against the anonymous authors), the Reviews constitute opinion, which is not subject to defamation liability.  *See Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999) (statement that competitor was "too small" to handle potential customer's business was "vague and subjective" and therefore not defamatory); *Mitchell v Sprott* [2002] 1 NZLR 766, at [16-17] ("[a] defence of honest opinion" is available where "the words complained of . . . were an expression of opinion, not an imputation of fact") (attached as Exh. A to Decl. of Tim Mahood, Mar. 1, 2022 ("Mahood Decl.")).

*Second*, *Highfields* requires a showing that the allegedly defamatory statements caused "real harm to the interests of the plaintiff."  *Highfields Capital Mgmt.*, 385 F. Supp. 2d at 975.  Similarly, under New Zealand law, a corporation suing for defamation must show that the statements at issue caused it pecuniary loss.  *See CPA Australia Ltd. v New Zealand Inst. of Chartered Accountants* [2015] NZHC 1854, at [66], [101] (attached as Exh. B to Mahood Decl.) (defamation claim failed because "a defamation proceeding [by] a body corporate will fail unless the publication caused or is likely to cause pecuniary loss," and "[t]here is no evidentiary basis on which to rely, to draw an inference that what was said to the two audiences has caused pecuniary loss to" corporate plaintiff).  ZURU fails to make this showing as well, as it offers nothing more than averments by Mat and Nick Mowbray, its co-CEOs, that they "believe that the Reviews defame and harm ZURU and its leadership," without explaining why they hold that purported

1    belief, or what loss ZURU is supposed to have suffered.

2        *Third*, ZURU cannot obtain the discovery sought under Section 1782 because its

3    Subpoenas represent an "attempt to circumvent proof-gathering restrictions or other policies of a

4    foreign country or the United States."  *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241,

5    265 (2004).  New Zealand law does not allow a prospective plaintiff to obtain pre-litigation

6    discovery of an unknown defendant's identity in these circumstances.  Specifically, to obtain the

7    information sought, ZURU would need to serve the intended defendants with its application for

8    pre-action discovery, or show that it is likely to succeed on its defamation claim, and ZURU

9    cannot do either.  *See* New Zealand High Ct. R. 8.20 (attached as Exh. C to Mahood Decl.)

10   (prospective plaintiff may only seek pre-litigation discovery "by interlocutory application made

11   on notice" "(a) to the person" in possession of the documents and "(b) to the intended

12   defendant"); *Tahi v Taua* [2018] NZHC 3372, at [91] (attached as Exh. D to Mahood Decl.)

13   (potential plaintiff must "show that the intended cause of action has merit" to obtain discovery of

14   unknown defendant's identity).

15       *Finally*, in addition to the reviewers' identifying information, ZURU's subpoenas seek

16   documents reflecting "the number of persons/web users who have seen and/or engaged with the

17   Reviews."  However, ZURU fails to explain why these statistics are supposedly relevant to its

18   defamation claim.  *See Comcast Cable Comms., LLC v. Hourani*, No. 15-cv-1724, 2016 WL

19   2992053, *35 (D.D.C. May 23, 2016) (court "den[ied] the request for a § 1782 enforcement

20   order" enforcing English court's order, because "the U.K. Order seeks information that is not

21   relevant to the allegations of the U.K. complaint").  In any event, Section 1782 does not require

22   Glassdoor to disclose such nonpublic and competitively sensitive information.  *See In re*

23   *King.com Ltd.*, No. 16-mc-80070, 2016 WL 4364286, *8 (N.D. Cal. Aug. 16, 2016) (quashing

24   subpoena pursuant to Section 1782 on the ground that, in *Intel*, "[t]he Supreme Court . . .

25   discussed the use of § 1782 applications for 'fishing expeditions,' suggesting that district courts

26   may prevent discovery of business secrets and confidential information," and subpoena sought

27   such information).  Moreover, Glassdoor is unable to generate or retrieve the specific information

28   requested.  Glassdoor can only obtain data regarding the number of times a given *page*, which

-3-

contains multiple employer reviews, has been seen by its users, and cannot do so with respect to an individual review.  Further, to locate data concerning a particular page of reviews, Glassdoor would have to conduct a complex and time-consuming software query.

**STATEMENT OF FACTS**

Glassdoor operates Glassdoor.com, which provides a forum for current and former employees of companies to anonymously voice opinions regarding those businesses.  (Decl. of Joseph M. Freeman, Mar. 1, 2022 ("Freeman Decl."), ¶ 2.)  An employee can express an opinion about an employer on Glassdoor.com by posting a "review," in which the employee assigns the employer between one and five stars in a number of categories, and discusses the employer's "pros and cons."  (*Id.*)  Glassdoor makes explicit to users that it "provid[es] a constructive platform for people to share their opinions about their jobs and companies anonymously" (*id.* Exh. D), and "assume[s] no responsibility for unintended, objectionable, inaccurate, misleading, or unlawful Content" on the site (*id.* Exh. A, ¶ 3(A)).  Glassdoor's TOU further provide that, "[w]hile Glassdoor has no obligation to do so, Glassdoor reserves the right to review and delete any Content (or portion thereof) that we believe, in our sole discretion, violates these Terms," and "if we choose not to remove or edit Content that you find objectionable, that decision will not constitute a violation of these Terms or any agreement we have with you."  (*Id.* Exh. A, ¶ 6(A).)

ZURU states that it is a maker of "innovative toys and consumer products" that "maintain[s] a large office in Auckland, New Zealand, where it was founded."  (ZURU's Mem. of Law in Supp. of *Ex Parte* App. for Order Pursuant to 28 U.S.C. § 1782, Jan. 24, 2022, Dkt. No. 1-4 ("*Ex Parte* Mem."), at 2-3.)  Between October 12 and November 25, 2021, six employer reviews of ZURU (the "Reviews") were published anonymously on Glassdoor.com.  (Decl. of Joseph R. Oliveri, Jan. 20, 2022, Dkt. No. 1-5 ("Oliveri Decl."), Exh. 1.)  ZURU claims the Reviews are defamatory based on statements in the Reviews that ZURU's "Co-CEOs Mat and Nick Mowbray" are "'incompetent' and 'not competent'; 'exploit[]' their employees; have 'zero respect' for ZURU's employees; do not know 'how to run a business'; treat employees as 'disposable' and 'dispensable'; and . . . 'find a way to get rid of [employees].'"  (*Ex Parte* Mem. at 4.)

-4-

Although ZURU does not specify which of the supposedly defamatory statements appears in which of the Reviews, the statements cited by ZURU in fact appear in only three of the six Reviews of which ZURU complains — specifically, in the November 2, November 11 and November 25 Reviews.  (Oliveri Decl. Exh. 1.)  ZURU appears to claim Glassdoor should nonetheless be required to produce identifying information concerning the remaining Reviews because all of the reviewers say they are "'Former Employee[s]' of ZURU," two reviewers say they worked in Auckland, New Zealand, and the Reviews supposedly "employ similar word choices and writing style[s]."  (*Ex Parte* Mem. at 4-5.)  ZURU does not claim to have lost sales revenue or suffered any other quantifiable loss due to the Reviews.  Instead, each of the Mowbrays (*i.e.*, ZURU's co-CEOs) simply asserts that "ZURU and I believe that the Reviews defame and harm ZURU and its leadership," without explaining the basis for that purported belief.  (Decl. of Mat Mowbray, Jan. 20, 2022, Dkt. No. 1-7 ("M. Mowbray Decl."), ¶ 8; Decl. of Nick Mowbray, Jan. 20, 2022, Dkt. No. 1-8 ("N. Mowbray Decl."), ¶ 9.)

ZURU wrote to Glassdoor, demanding that Glassdoor voluntarily remove the Reviews.  (Oliveri Decl. Exh. 2, at 1-2.)  Glassdoor responded by removing three of the six Reviews from its site, without any admission that those Reviews were defamatory or that Glassdoor had any obligation to remove them.  (*Id.* at 4.)  ZURU then requested that Glassdoor remove the remaining Reviews.  (*Id.* at 6.)  In response, Glassdoor removed the November 25 Review.  (*Id.* at 11.)  ZURU wrote again to Glassdoor, this time demanding that Glassdoor provide identifying information regarding all of the Reviews' authors.  (*Id.* Exh. 3, at 5.)  Glassdoor declined to do so.  ZURU then brought an *ex parte* application to serve the Subpoenas (*Ex Parte* Mem.), which the Court granted (Order, Feb. 4, 2022, Dkt. No. 7).  The Court's order stated that, "[w]ithin 21 days of receiving notice of the subpoenas," which Glassdoor received on February 8, "Glassdoor . . . may file a motion in this Court to quash or to modify the subpoenas."  (*Id.* at 2.)

Glassdoor sent ZURU written responses and objections to the Subpoenas on February 22.  (Decl. of William J. Frimel, Mar. 1, 2022, Exh. A.)  Glassdoor's counsel and ZURU's counsel met and conferred regarding Glassdoor's objections telephonically on February 28.  (*Id.* ¶ 3.)  Glassdoor's counsel requested a two-week extension of its date to file the present motion to

facilitate further discussions with ZURU, but ZURU's counsel refused.  (*Id.* Exh. B.)

## **ARGUMENT**

Section 1782(a) provides, in part, that "[t]he district court of the district in which a person resides or is found *may* order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal."  28 U.S.C. § 1782(a) (emphasis added).  "[T]his statutory language 'authorizes, but does not require,' that district courts provide judicial assistance to § 1782 applicants."  *Sergeeva v. Tripleton Int'l. Ltd.*, 834 F.3d 1194, 1198 (11th Cir. 2016) (citing *Intel Corp.*, 542 U.S. at 255, 264); *see also United Kingdom v. United States*, 238 F.3d 1312, 1318-19 (11th Cir. 2001) ("Whether, and to what extent, to honor a request for assistance pursuant to § 1782 [is] committed to . . . the district court.").

"A district court has wide discretion to grant or deny a Section 1782 application, and '[t]he Supreme Court has provided a 'non-exhaustive' list of factors that a court should consider:'" (1) whether the "person from whom the discovery is sought is a participant in the foreign proceeding"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) whether the discovery request is an "attempt to circumvent proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the discovery requested is "unduly intrusive or burdensome."  *IPCom GMBH & Co. v. Apple Inc.*, 61 F. Supp. 3d 919, 922 (N.D. Cal. 2014) (quoting *Intel Corp.*, 542 U.S. at 264).

Notably, even if the first two of the above factors favor granting discovery under Section 1782, the discovery sought may nonetheless be denied if the third and/or fourth factors weigh against disclosure.  *See, e.g., Tokyo Univ. of Social Welfare*, 2021 WL 4124216, *5 (determining, without addressing other *Intel* factors, that Section 1782 subpoena should be quashed because its "request for identifying information is . . . unduly burdensome under *Intel*"); *In re PGS Home Co. Ltd.*, No. 19-mc-80139, 2019 WL 6311407, *3, 6 (N.D. Cal. Nov. 25, 2019) (even though "the first three *Intel* factors point in favor of granting [applicant's] request," quashing subpoena

because applicant's "request for identifying information is unduly burdensome under *Intel*").

## I.     THE SUBPOENAS IMPROPERLY ATTEMPT TO CIRCUMVENT PROOF-GATHERING RESTRICTIONS UNDER NEW ZEALAND LAW

### A.  ZURU Could Not Obtain Pre-Action Discovery of the Does' Identities in a New Zealand Court

As discussed, the Court may deny a request for discovery under Section 1782 where the request "attempt[s] to circumvent proof-gathering restrictions or other policies of a foreign country or the United States." *IPCom GMBH,* 61 F. Supp. 3d at 922.  As ZURU concedes, it is merely "preparing to file an action for defamation in the High Court of New Zealand," and has not yet filed suit.  (*Ex Parte* Mem. at 6.)  Because New Zealand law does not permit ZURU to obtain discovery prior to filing a lawsuit in these circumstances, and thus ZURU could not seek the relief it now demands in a New Zealand court, ZURU's Subpoenas improperly attempt to circumvent New Zealand law.

New Zealand High Court Rule 8.20 only allows a prospective plaintiff to seek pre-litigation discovery "by interlocutory application made on notice" both "(a) to the person" in possession of the documents and "(b) to the intended defendant."  New Zealand High Ct. R. 8.20(3) (attached as Exh. C to Mahood Decl.).  Where, as here, the identity of the "intended defendant" is unknown, it is not possible to comply with this rule.  *See Tahi v Taua* [2018] NZHC 3372, at [94] (attached as Exh. D to Mahood Decl.) (application for discovery under Rule 8.20 is unavailable where the defendant's identity is unknown, as "[s]ubrule (3) is expressed in mandatory terms (for example, in the use of the word 'must')" and contains a "service requirement").  Moreover, if the prospective plaintiff cannot seek pre-action discovery under Rule 8.20, the plaintiff must do so pursuant to *Norwich Pharmacal Co. v Customs & Excise Comm'rs* [1974] AC 133 (HL), which imposes a "more stringent test for the discovery, . . . including a higher requirement on the intending plaintiff to show that the intended cause of action has merit[]." *Tahi v Taua* [2018] NZHC 3372 at [91].  Because, as discussed below (*see* § II *infra*), ZURU's prospective defamation claim is without merit, ZURU cannot meet this requirement.

As ZURU is attempting to obtain discovery it would not be permitted to procure under New Zealand law, the third *Intel* factor weighs in favor of quashing the Subpoenas.  *See In re Jud.*

*Assistance Pursuant to 28 U.S.C. § 1782 by Macquarie Bank Ltd.*, No. 2:14–cv–00797, 2015 WL 3439103, \*8 (D. Nev. May 28, 2015) (denying Section 1782 application on the ground, among others, that applicant "sought discovery from the District Court of Amsterdam, and . . . its request was denied," and applicant's "subpoenas were served in response to the . . . denial of Petitioner's request for discovery"); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C–07–5944, 2013 WL 183944, \*3 (N.D. Cal. Jan. 17, 2013) (denying Section 1782 application because, *inter alia*, Section 1782 applicant "side-stepped less-than-favorable discovery rules" in the foreign forum "by resorting immediately to § 1782").

### B.  New Zealand's Membership in the Commonwealth of Nations Is Irrelevant

ZURU claims it is "not aware of any restrictions on proof-gathering procedures that would prohibit obtaining the discovery it seeks through its Application," and that "U.S. courts have routinely granted applications under Section 1782 to obtain discovery of evidence for use in legal proceedings with Commonwealth of Nations countries like New Zealand."  (*Ex Parte* Mem. at 11.)  But the cases ZURU cites (*id.* at 11) had nothing to do with either obtaining pre-litigation discovery or identifying an anonymous speaker, and nowhere referred to the fact that the underlying lawsuits were in Commonwealth countries.  *See In re Frederick*, No. 1-20-MC-965, 2020 WL 5742772, \*1 (W.D. Tex. Sept. 24, 2020) (*ex parte* application seeking authorization to issue subpoena "to procure the testimony of Eric Nogelmeier, an employee of Zoho Corporation," in a "proceeding pending in the High Court of New Zealand"); *In re IKB Deutsche Industriebank AG*, No. 09-cv-7852, 2010 WL 1526070, \*1 (N.D. Ill. Apr. 8, 2020) (motion to quash subpoena seeking documents concerning identified nonparty's "participation in" "collateralized debt obligations" for "pending litigation in the United Kingdom"); *In re FutureCorp. Int'l. Pty Ltd.*, No. C12–80267, 2012 WL 5818288, \*1 (N.D. Cal. Nov. 15, 2012) (*ex parte* application seeking "discovery from . . . a defendant in the Australian proceeding" at issue); *In re App. of Guy*, No. M 19–96, 2004 WL 1857580, \*2 (S.D.N.Y. Aug. 19, 2004) (*ex parte* application seeking discovery from "Ralph Esmerian" and associated, identified persons for pending "English Action").  Indeed, the fact that a foreign proceeding is in a Commonwealth nation does not seem to make a Section 1782 petition a sure bet, as some courts have refused to compel discovery under Section 1782 in

such circumstances.  *See, e.g., United Kingdom v. United States*, 238 F.3d 1312, 1324 (11th Cir. 2001) (motion to compel pursuant to Section 1782 properly denied, where underlying action was pending in the U.K.); *Comcast Cable Comms., LLC v. Hourani*, No. 15-cv-1724, 2016 WL 2992053, *35 (D.D.C. May 23, 2016) (same).

## II.      THE SUBPOENAS ARE UNDULY INTRUSIVE AND BURDENSOME

As discussed, the Subpoenas demand, *inter alia*, the identifying information in Glassdoor's possession concerning the Reviews' authors.  (Freeman Decl. Exh. B, Att. A, at 3 (seeking "Documents sufficient to show the name, email address, and IP address of the person(s)/user(s) who posted the Reviews"); *id.* Exh. C, Att. A, at 1 (seeking an "explanation" of the documents sought in ZURU's requests for documents).)  As with other attempts to force disclosure of an anonymous speaker's identity, ZURU's Section 1782 subpoena raises First Amendment concerns.  *See Tokyo Univ. of Social Welfare*, 2021 WL 4124216, *3 (observing, with respect to a "section 1782 applicant seek[ing] leave to conduct discovery to identify an anonymous speaker," that "an author's decision to remain anonymous, like other decisions concerning omissions or additions to the content of a publication, is an aspect of the freedom of speech protected by the First Amendment") (quoting *McIntyre*, 514 U.S. at 342).

"Where a section 1782 applicant seeks leave to conduct discovery to identify an anonymous speaker, courts have evaluated the request under the fourth *Intel* factor — whether the request is unduly intrusive or burdensome."  *Id.* at *3.  "Since discovery under section 1782 is guided by the standards set forth in the Federal Rules of Civil Procedure, courts have applied the good cause standard that governs Rule 26(d) requests for early discovery in determining whether to allow a section 1782 applicant to obtain information to unmask an anonymous speaker."  *Id.* "In applying the Rule 26(d) good cause standard, courts examine four factors:"

> [Whether] (1) the plaintiff can identify the missing party with sufficient specificity such that the Court can determine that defendant is a real person or entity who could be sued in federal court; (2) the plaintiff has identified all previous steps taken to locate the elusive defendant; (3) the plaintiff's suit against defendant could withstand a motion to dismiss; and (4) the plaintiff has demonstrated that there is a reasonable likelihood of being able to identify the defendant through discovery such that service of process would be possible.

*Id.* (quoting *OpenMind Sols., Inc. v. Does 1-39*, No. C 11-3311, 2011 WL 4715200, *2 (N.D. Cal.

-9-

Oct. 7, 2011)).  "If an applicant satisfies all four good cause factors, the court must then consider the potential chilling effect on First Amendment rights of ordering disclosure of an anonymous speaker's identity."  *Id.*  In the case of a business such as ZURU, "the test articulated in *Highfields Capital Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969, 974 (N.D. Cal. 2005)" determines whether the "potential chilling effect" associated with compelling disclosure would violate the First Amendment.  *Id.* at *4 (citing *In re PGS Home Co.*, 2019 WL 6311407, *6).

Under *Highfields*, "the plaintiff must adduce *competent evidence — and the evidence plaintiff adduces must address all of the inferences of fact that plaintiff would need to prove in order to prevail under at least one of the causes of action plaintiff asserts.*"  *Highfields Capital Mgmt.,* 385 F. Supp. 2d at 975-76 (emphasis in original).  If the plaintiff "meets its initial burden, the court must then 'assess and compare the magnitude of the harms that would be caused to the competing interests by a ruling in favor of' the applicant and the speaker."  *Tokyo Univ. of Social Welfare*, 2021 WL 4124216, *4 (quoting *Highfields Capital Mgmt.*, 385 F. Supp. 2d at 976).

ZURU cannot meet the above requirements.

**A.  ZURU Cannot Meet the Fed. R. Civ. P. 26(d) Requirements**

    **1.  ZURU's complaint in the hypothetical New Zealand litigation would not withstand a motion to dismiss**

As discussed, under the Fed. R. Civ. P. 26(d) test for determining whether good cause exists to require disclosure of an anonymous speaker's identity, ZURU must show that its "suit against [the anonymous authors] could withstand a motion to dismiss."  *Tokyo Univ. of Social Welfare*, 2021 WL 4124216, *3.  ZURU's hypothetical lawsuit could not do so, because the statements it claims are defamatory constitute opinion, which is not actionable under either United States or New Zealand law.  *See Piping Rock Ptnrs. v. David Lerner Assocs., Inc.*, 946 F. Supp. 2d 957, 970 (N.D. Cal. 2013) ("Generally, statements of opinion are not actionable as defamation, whereas statements of fact are actionable."); *Mitchell v Sprott* [2002] 1 NZLR 766, at [16-17] (attached as Exh. A to Mahood Decl.) ("A defence of honest opinion" is available where "the words complained of . . . were an expression of opinion, not an imputation of fact.").

ZURU's *ex parte* application sets forth the allegedly defamatory statements its

hypothetical lawsuit would be based on. Specifically, ZURU complains of the following statements:

- The November 2, 2021 Review's statement that ZURU's management is "incompetent," "not competent," and "exploitive," and will "find a way to get rid of you" (M. Mowbray Decl. ¶ 6; N. Mowbray Decl. ¶ 7; Oliveri Decl. Exh. 1, at 2);

- The November 11, 2021 Review's statement that ZURU's management "are completely out of touch with how to run a business," "have zero respect for" employees, and "see their staff as dispensable worker bees" (M. Mowbray Decl. ¶ 6; N. Mowbray Decl. ¶ 7; Oliveri Decl. Exh. 1, at 3); and

- The November 25, 2021 Review's statement that "[e]veryone is seen as disposable" at ZURU (M. Mowbray Decl. ¶ 6; N. Mowbray Decl. ¶ 7; Oliveri Decl. Exh. 1, at 5).

### a. ZURU does not identify *any* defamatory statements in the October 12, November 13 or November 20 reviews

ZURU fails to identify any supposedly actionable statements in the Reviews dated October 12, November 13, or November 20. As ZURU does not explain why those Reviews are defamatory, ZURU's claims as to those Reviews cannot survive a motion to dismiss. *See Tokyo Univ. of Social Welfare*, 2021 WL 4124216, *5 (quashing Section 1782 subpoena seeking anonymous speaker identity because plaintiff "does not explain how the tweet [by defendant] is defamatory under Japanese law" and "it is not clear that the statements in the tweet are false," and thus plaintiff "failed to show that its claims could withstand a motion to dismiss in Japan"); *see also In re PGS Home Co.*, 2019 WL 6311407, *4 (quashing subpoena because, "[g]iven that . . . most of the statements are in the form of opinions about services PGS provided, it is unclear whether PGS's claims could survive a motion to dismiss in a civil action in Japan").

Nor could ZURU plausibly dispute that those Reviews are opinion. The October 12 Review tersely asserts that ZURU has a "[t]oxic culture, hostile leadership, erratic strategy & extremely high turnover" (Oliveri Decl. Exh. 1, at 1), without defining those terms or explaining what conduct by ZURU justifies those criticisms, and is thus too general and subjective to be actionable. Similarly, the November 20 Review claims, without elaboration, that ZURU has a "[t]errible culture with very little growth opportunities [sic]." (*Id.* at 4.) ZURU did not even include the November 13 Review (which gave ZURU four out of five stars) in its *ex parte*

application.  *See Kechara House Buddhist Ass'n. Malaysia v. Does*, No. 15–cv–00332, 2015 WL 5538999, *5 (N.D. Cal. Sept. 18, 2015) (as "Plaintiff did not attach any of the allegedly defamatory materials to the amended complaint," "the amended complaint could not even withstand a motion to dismiss," and thus *ex parte* application for disclosure of anonymous speaker identities denied).  Hence, Glassdoor cannot be required to provide identifying information concerning the authors of the October 12, November 13 or November 20 Reviews.

ZURU appears to suggest that, although those Reviews make no defamatory statements, ZURU is nonetheless entitled to their authors' identities because "ZURU has reason to believe that" all of the Reviews "were posted by the same person or at the behest of one person."  (*Ex Parte* Mem. at 4-5.)  As an initial matter, ZURU cites no authority to the effect that, although it appears to concede that some of the Reviews are not defamatory, it may nonetheless obtain the identities of those Reviews' authors if it offers circumstantial evidence suggesting that the same person or people wrote all of the Reviews.  The fact that a defamation plaintiff may not sue a defendant without specifying that defendant's role in making the allegedly defamatory statements suggests that ZURU cannot do so.  *See Quinteros v. InnoGames*, No. C19-1402, 2020 WL 3574268, *2 (W.D. Wash. Jul. 1, 2020) (dismissing defamation claim as to one defendant because "Plaintiff does not specify to which defendant she attributes" statements at issue, and "does not establish that any statements are attributable to" moving defendant); *Choyce v. SF Bay Area Indep. Media Ctr.*, No. 13–cv–01842, 2013 WL 6234628, *9-10 (N.D. Cal. Dec. 2, 2013) (same).

In any event, ZURU's evidence that the same person or people wrote the Reviews is threadbare at best.  ZURU cites the facts that two of the six Reviews say their authors worked in Auckland, New Zealand, and that all of the Reviews say they were written by "Former Employees."  (*Ex Parte* Mem. at 5.)  But ZURU does not specify how many of its employees work in Auckland (only that it "continues to maintain a large office in Auckland" (*id.* at 3)) or how many former employees it has, so this evidence fails to show that only one person or a small group of people could have written the Reviews.  ZURU next states that "Glassdoor would be required by its Terms of Use to remove the Defamatory Reviews . . . if they were not published by former ZURU employees — but Glassdoor has refused to remove two of the Defamatory

Reviews," apparently suggesting that this shows that former ZURU employees must have written at least two of the Reviews.  (*Id.* at 5.)  In fact, Glassdoor's Terms of Use ("TOU") do not require it to remove any content from its site.  The TOU provide that, "[w]hile Glassdoor has no obligation to do so, Glassdoor reserves the right to review and delete any Content (or portion thereof) that we believe, in our sole discretion, violates these Terms," and "if we choose not to remove or edit Content that you find objectionable, that decision will not constitute a violation of these Terms or any agreement we have with you."  (Freeman Decl. Exh. A, ¶ 6(A).)  Moreover, as noted, even if this indicates that former ZURU employees wrote the Reviews, ZURU offers no evidence regarding how many former ZURU employees there are, and hence this fact does nothing to prove its point.  Finally, ZURU asserts that the Reviews "employ similar word choices and writing style" and "were posted over a short period of time."  (*Ex Parte* Mem. at 5.)  But the evidence ZURU cites (*id.* at 5 (citing Decl. of Eric Olavson, Jan. 24, 2022, Dkt. No. 1-6 ("Olavson Decl."), ¶ 12))[1] is, again, entirely underwhelming.  The paragraph of ZURU's in-house counsel's declaration relating to the Reviews' writing style simply repeats that they use "similar word choices" and a "similar style of writing," without describing the supposed similarities. (Olavson Decl. ¶ 11.)

### b.  The objected-to language in the remaining Reviews is opinion

The language in the remaining Reviews to which ZURU objects is too vague and subjective to be factual for defamation purposes:

- **The November 2 Review.**  It is unclear, from the bare assertions cited by ZURU that ZURU's management is "incompetent" and "not competent," what its management lacks competence at doing, what standard should be used to measure its competence, and what facts the author bases that claim upon.  Similarly, the Review's statement that ZURU is "exploitive" is a generalized and subjective judgment of the fairness of ZURU's management.  Finally, the claim that ZURU will "find a way to get rid of you," as a prediction of ZURU's future conduct, is also opinion.  *See, e.g., Cochran v. NYP Holdings, Inc.*, 58 F. Supp. 2d 1113, 1124 (C.D. Cal. 1998) (statement that plaintiff attorney "will say or do just about anything to win, typically at the expense of

---

[1] ZURU's memorandum in support of its *ex parte* application cites paragraph 12 of the Olavson Declaration (Ex Parte Mem. at 5), but this appears to be an error, as paragraph 12 says only that "ZURU has taken all practical, available steps to attempt to identify the former employee(s) who posted the Reviews" (Olavson Decl. ¶ 12), and says nothing about similarities in their writing styles.

the truth" was protected opinion, because it "represent[ed] [defendant's] prediction . . . that [plaintiff] will do anything to win").

- **The November 11 Review.** This Review's statement that ZURU's management "are completely out of touch with how to run a business" is, again, too ambiguous and subjective to be factual. It is unclear, from this statement alone, what criteria the reviewer is applying in characterizing ZURU's management as "out of touch," or what ZURU did to warrant that characterization. Likewise, the claim that ZURU has "zero respect for" employees and sees them as "dispensable worker bees" fails to make clear what conduct by ZURU, in the author's view, was disrespectful to employees.

- **The November 20 Review.** The only allegedly objectionable statement in this Review says that "[e]veryone is seen as disposable" at ZURU. Again, this statement leaves unclear what conduct by ZURU it is based upon, and what criteria it is relying on in judging that ZURU treats employees as "disposable."

As generalized, subjective expressions of dislike for ZURU, these statements are non-actionable opinion. *See Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999) (statement that competitor was "too small" to handle potential customer's business was "vague and subjective" and therefore not defamatory); *USA Techs., Inc. v. Doe*, 713 F. Supp. 2d 901, 908 (N.D. Cal. 2010) (statement that plaintiff's CEO's "worldview is that humanity exists to be fleeced" was "'rhetorical hyperbole,' and not a statement of fact that can be verified or disproved," and thus motion to quash subpoena seeking anonymous speaker's identity granted); *Mitchell v Sprott* [2002] 1 NZLR 766, at [28] (granting summary judgment to defendant because "a reasonable reader would undoubtedly conclude" that defendant's statement that plaintiff's "'tactics are aimed at preventing that debate' [was] an expression of [defendant's] opinion concerning the narrated actions and utterances of" plaintiff).

The fact that the Reviews were written by anonymous individuals in an internet forum also counsels in favor of finding the Reviews to be non-actionable opinion. *See Global Telemedia Int'l., Inc. v. Doe 1*, 132 F. Supp. 2d 1261, 1267 (C.D. Cal. 2001) ("[T]he general tenor, the setting and the format of [the allegedly defamatory] statements strongly suggest that the postings are opinion," as they "were posted anonymously in the general cacophony of an Internet chat-room in which about 1,000 messages a week are posted about" plaintiff). Further, Glassdoor's site makes clear that Glassdoor does not control the contents of users' posts, and that

it simply provides a forum for third parties to express opinions.  (Freeman Decl. Exh. D (statement by Glassdoor that it "provid[es] a constructive platform for people to share their opinions about their jobs and companies anonymously"); *id.* Exh. A, ¶ 3(A) (Glassdoor.com's Terms of Use stating that "we assume no responsibility for unintended, objectionable, inaccurate, misleading, or unlawful Content made available by other Users," and "[w]e are not responsible for any incorrect or inaccurate Content . . . posted on the Services," *i.e.*, the Glassdoor site).) These disclaimers also support a finding that a reasonable reader would take the Reviews as opinion.  *See ZL Techs., Inc. v. Gartner, Inc.*, 709 F. Supp. 2d 790, 797 (N.D. Cal. 2010) (in defamation action concerning review of plaintiff's products, the fact that the review stated that "[t]he opinions expressed herein are subject to change without notice" supported finding that review was protected opinion).

### 2.   ZURU's authorities are not to the contrary

ZURU's *ex parte* application does not discuss whether the Reviews are properly considered fact or opinion, instead simply insisting that "[t]he Defamatory Reviews plainly harm ZURU and its leadership . . . in their reputations and tend to charge them with incompetence and injure them with respect to their profession, trade or business" and "[a]s such" "are defamatory under New Zealand law (and also California law)."  (*Ex Parte* Mem. at 4.)  But the authorities ZURU cites do not support this proposition, and ZURU does not explain their relevance.

*Solomon v Prater* [2020] NZHC 481, which ZURU relies on (*Ex Parte* Mem. at 4 n.6 (*see also* Oliveri Decl. Exh. 5)), nowhere held that the statements at issue were defamatory because they "charge[d]" the plaintiff "with incompetence" or "injure[d] [him] with respect to [his] profession, trade or business."  *Solomon* held that certain statements in a letter by the defendant were defamatory because they "tend[ed] to affect the claimant's reputation adversely, and in more than a minor way," but the defendant's statements were far more specific and inflammatory than the Reviews' vague generalizations.  *Solomon v Prater* [2020] NZHC 481, at [21].  For instance, the letter stated that the plaintiff "manipulat[ed] the voting" in a trust's election "to the advantage of his chosen candidates" and made multiple "inappropriate use[s] of" the trust's funds.  *Id.* at [15].  The other New Zealand decision cited by ZURU, *Siemer v Stiassny* [2011] NZCA 106

(attached as Exh. 6 to Oliveri Decl.), did not even address whether the statements at issue were defamatory — instead, the defendant's appeal only "challenge[d] the quantum of the damages awards." *Siemer v Stiassny* [2011] NZCA 106, at [2].  Finally, ZURU cites *Rodriguez v. Panayiotou*, 314 F.3d 979 (9th Cir. 2002), apparently to show that the Reviews would be defamatory under California law.  In fact, in *Rodriguez*, the defendant accused the plaintiff of engaging in "lewd acts . . . in [a] men's restroom" in order to "induce[] [defendant] to engage in the lewd act," *id.* at 982 — again, an allegation far more inflammatory than the Reviews' vague claims that the Mowbrays are "incompetent" and have "zero respect" for employees.

### B.  ZURU Fails to Provide a "Real Evidentiary Basis" For Its Defamation Claims

Under New Zealand law, a corporation claiming defamation must prove that the objected-to statements caused it a monetary loss.  (Mahood Decl. Exh. E (New Zealand Defamation Act of 1992, § 6).)  Specifically, per Section 6 of the New Zealand Defamation Act of 1992, "[p]roceedings for defamation brought by a body corporate," *i.e.*, a corporation such as ZURU, "shall fail unless the body corporate alleges and proves that the publication of the matter that is the subject of the proceedings (a) has caused pecuniary loss; or (b) is likely to cause pecuniary loss to that body corporate."  (*Id.*)  ZURU's evidence fails to meet this requirement.

The Mowbrays' declarations offer no reason to believe the Reviews caused ZURU any monetary loss, instead asserting only that "ZURU and I believe that the Reviews defame and harm ZURU and its leadership" without stating the basis for that purported belief.  (M. Mowbray Decl. ¶ 8; N. Mowbray Decl. ¶ 9.)  Thus, ZURU does not provide a real evidentiary basis for the existence of a pecuniary loss.  *See CPA Australia Ltd. v New Zealand Inst. of Chartered Accountants* [2015] NZHC 1854, at [101] (defamation claim failed because "[t]here is no evidentiary basis on which to rely, to draw an inference that what was said to the two audiences has caused pecuniary loss to [plaintiff].  Accordingly, I am not satisfied that [plaintiff] can make out that it has suffered any pecuniary loss.") (attached as Exh. B to Mahood Decl.).

ZURU's Subpoenas should be quashed for this further reason.  *See Highfields*, 385 F. Supp. 2d at 979 (plaintiff failed to provide "real evidentiary basis" for defamation claim that would justify disclosure of anonymous speaker's identity because "[t]here is no evidence that [the

-16-

statements] damaged plaintiff in fact.  Nor can we reliably assume damage (to plaintiff's reputation, or to its business prospects, or to its income) from the context"); *Tokyo Univ. of Social Welfare*, 2021 WL 4124216, *5 (as plaintiff "offers no evidence that the number of students applying for admission to and/or deciding to attend the school has declined at all, much less that it declined as a result of the [allegedly defamatory] tweet," plaintiff "failed to satisfy its initial burden under *Highfields*," and thus Section 1782 subpoena quashed).

### C.  ZURU's Authority Is Not to the Contrary

ZURU's *ex parte* application asserts that "courts have repeatedly held that" the "unduly intrusive or burdensome" factor "weighs in favor of granting a Section 1782 application where the applicant seeks discovery from a website operator — including Glassdoor — to reveal the identity of a person who used its site to allegedly infringe the applicant's rights."  (*Ex Parte* Mem. at 11-12.)  In fact, all but one of the cases cited by ZURU concerned *ex parte* applications merely to *serve* subpoenas, and acknowledged, after a cursory discussion of the burden and intrusiveness issue, that the recipient of those subpoenas could move to quash them on the ground that the Section 1782 requirements were not met.  *See IS Prime Ltd. v. Glassdoor, Inc.*, No. 21-mc-80178, 2021 WL 5889373, *4 (N.D. Cal. Dec. 13, 2021) (approving, on *ex parte* basis, service of a subpoena on Glassdoor, and noting that "Glassdoor . . . shall have 30 calendar days . . . to file any motions in this court to contest the subpoena"); *In re Legatum*, No. 21-mc-80032, 2021 WL 706436, *3 (N.D. Cal. Feb. 23, 2021) ("If Glassdoor.com wishes to move to quash the subpoena issued to it, it shall do so before the return date of the subpoenas."); *In re App. for Appt. of a Comm'r. re Req. for Jud. Assistance*, No. C 11–80136, 2011 WL 2747302, *7 (N.D. Cal. Jul. 13, 2011) ("If WordPress.com or Automattic wishes to move to quash the subpoena issued to it, they shall do so before the return date of the subpoena.").  Thus, those cases are unhelpful to ZURU in ruling on Glassdoor's motion to quash.

In the remaining cited authority, *Digital Shape Techs., Inc. v. Glassdoor, Inc.*, No. 16-mc-80150, 2016 WL 5930275, *4 (N.D. Cal. Oct. 12, 2016), the author of the Glassdoor.com review at issue was, importantly, *not* anonymous.  Instead, the defendant in the foreign proceeding "admitted she authored the [allegedly defamatory] March 7, 2013 review."  *Id.* at *4.  Thus,

-17-

although the court acknowledged that an "anonymous speaker should not be identified unless certain requirements are met," it ruled that the defendant "no longer ha[d] an expectation of anonymity," and therefore the plaintiff's subpoena was not unduly intrusive or burdensome. *Id.* In contrast, ZURU, as it concedes (*Ex Parte* Mem. at 1), does not know the Does' identities, and thus *Digital Shape Technologies* is inapposite.

## III.   ZURU'S REQUEST FOR INFORMATION REGARDING GLASSDOOR USERS WHO "HAVE SEEN AND/OR ENGAGED WITH THE REVIEWS" SHOULD BE DENIED

Even assuming ZURU is entitled to a response to some portion of its Subpoenas, Request No. 4 in its subpoena for production of documents, which demands "Documents sufficient to show information regarding the number of persons/web users who have seen and/or engaged with the Reviews" (Freeman Decl. Exh. B, Att. A, at 3), is plainly unjustified.

*First*, ZURU's *ex parte* application nowhere explains why this information is relevant to ZURU's prospective New Zealand lawsuit.  As to ZURU's need for the documents it seeks, the Mowbrays' declarations say only that "there is no other mechanism available to ZURU to obtain the *identifying information* necessary to initiate litigation in New Zealand against the former employee(s) who posted the Reviews."  (M. Mowbray Decl. ¶ 9 (emphasis added); N. Mowbray Decl. ¶ 10 (emphasis added).)  The Mowbrays do not even allege that the number of users who viewed the Reviews is relevant to ZURU's anticipated claims, or that ZURU is unable to obtain that information through means other than the Subpoenas.  Likewise, ZURU's *ex parte* application asserts, without explanation, that "the number of persons/web users that have viewed the Defamatory Reviews" "tend[s] to show the identity of the person(s) who posted the Defamatory Reviews" (*Ex Parte* Mem. at 12), and the notion that learning the number of users who read the Reviews could somehow lead ZURU to the Does' identities makes no sense.

Thus, ZURU's request for this information must be denied.  *See Comcast Cable Comms.*, 2016 WL 2992053, *35 (court "exercise[d] its discretion to deny the request for a § 1782 enforcement order" enforcing English court's order requiring "release of . . . identifying information" of Comcast subscriber, because "the U.K. Order seeks information that is not

relevant to the allegations of the U.K. complaint"); *In re App. of Lazaridis*, 865 F. Supp. 2d 521, 528 (D. N.J. 2011) (denying Section 1782 petition because, *inter alia*, petitioner's "need for the documents remains unclear at best," and he "has not shown that he cannot obtain the information from other sources, without imposing this burden on" nonparty).

*Second*, complying with this Request would be impracticable for Glassdoor.  Glassdoor does not log the unique number of users who view each specific employer review.  (Freeman Decl. ¶ 3.)  Instead, Glassdoor is only able to determine the number of users who have viewed a *page* of reviews of a particular employer, and the reviews of an employer on Glassdoor.com typically span multiple pages.  (*Id.*)  Moreover, the reviews displayed on a given page change over time.  (*Id.*)  Thus, Glassdoor is not able to provide the precise information ZURU seeks.  Additionally, as Glassdoor does not ordinarily compute the number of users who viewed a particular page related to an employer on its site, Glassdoor would need to conduct a complex software query to perform that task, which would be a time-consuming process.  (*Id.* ¶ 4.)  *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2013 WL 183944, *4 (denying Section 1782 application because "the burden on [respondent] to gather and compile the electronic discovery record" sought by application "would be unacceptable").

*Third*, information regarding the viewership of Glassdoor's site is nonpublic and commercially sensitive.  If competing employment-related websites learned statistics concerning the viewership of Glassdoor.com, they could draw inferences about the success of Glassdoor's business strategies and reformulate their own accordingly.  (Freeman Decl. ¶ 5.)  *See, e.g., Gonzales v. Google, Inc.*, 234 F.R.D. 674, 684 (N.D. Cal. 2006) ("The disclosure of a statistically significant sample of Google's search index or query log may permit competitors to estimate information about Google's indexing methods or Google's users.").  ZURU should not be permitted to use Section 1782 to obtain such information.  *See In re King.com Ltd.*, No. 16-mc-80070, 2016 WL 4364286, *8 (N.D. Cal. Aug. 16, 2016) (quashing subpoena pursuant to Section 1782 on the ground that, in *Intel*, "[t]he Supreme Court . . . discussed the use of § 1782 applications for 'fishing expeditions,' suggesting that district courts may prevent discovery of business secrets and confidential information," and subpoenaing party sought such information

-19-

via its subpoena) (citing *Intel*, 542 U.S. at 265).

## **CONCLUSION**

For the foregoing reasons, ZURU's Subpoenas should be quashed.


/s/ William J. Frimel

Dated:  March 1, 2022                    WILLIAM J. FRIMEL
                                         Attorneys for Respondent GLASSDOOR, INC.

RESPONDENT GLASSDOOR, INC.'S MOTION TO QUASH